IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00839-KLM

JOSHAUA COLEMAN-DOMANOSKI, and
MALLORY COLEMAN-DOMANOSKI,

      Plaintiffs,

v.

ST. PAUL GUARDIAN INSURANCE COMPANY, a/k/a St. Paul Fire Guardian Insurance Company, and
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, INC., a/k/a St. Paul Fire Guardian Insurance Company,

      Defendants.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on **Defendants' Motion for Summary Judgment** [#19] ("Defendants' Motion") and **Plaintiffs' Fed. R. Civ. P. Motion for Partial Summary Judgment** [#26] ("Plaintiffs' Motion") (collectively "Motions").  The Court has reviewed the Motions [#19, #26], the Responses [#25 and #37], the Replies [#33 and #38], the case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, Defendants' Motion [#19] is **GRANTED**, and Plaintiff's Motion [#26] is **DENIED**.

## I.  Background

      This action involves a challenge by Plaintiffs to the decision of St. Paul Guardian Insurance Company and St. Paul Fire and Marine Insurance Company, Inc. (collectively "St. Paul") not to pay uninsured/underinsured motorist ("UM/UIM") benefits for a fatal work-related accident.  St. Paul contends that the accident is governed exclusively by the

Colorado workers-compensation system.  Plaintiffs assert that they are entitled to UM/UIM benefits under St. Paul's policy despite workers-compensation immunity of the tortfeasors.  The Amended Complaint [#11] asserts breach of contract and bad faith breach of contract in connection with St. Paul's denial of benefits, and a violation of Colo. Rev. Stat. §§ 10-3-1115(1)(a) and 10-3-116(1).   The policy at issue is a business auto policy issued by St. Paul to Patriot Well Solutions, LLC ("Patriot") that included UM/UIM insurance coverage (hereinafter "the Policy").

The claims arise from a vehicular accident in a company-owned vehicle covered under Patriot's policy with St. Paul.  Plaintiff Joshaua Coleman-Domanoski, an employee of Patriot, was injured in an accident in a Patriot vehicle driven by a fellow employee, Alexander Bednarz.  Mallory Coleman-Domanoski, Mr. Coleman-Domanoski's wife, claims loss of consortium due to her husband's injuries.  Because the accident was work-related, Plaintiffs sought and received full benefits from the workers-compensation system.  Plaintiffs assert that they are also entitled to recovery under Patriot's UM/UIM Policy.

St. Paul contends that the Court should grant summary judgment on Plaintiffs' claims for two reasons.  *Defs.' Mot.* [#19] at 2.  First, it contends that Plaintiffs' UM/UIM claim conflicts with Colorado law making the Workers Compensation Act of Colorado (the "WCA") the exclusive remedy for on-the-job personal injury claims.  *Id.*  St. Paul asserts in that regard that the terms of the Policy do not permit coverage for claims that fall within the WCA, and that UM/UIM coverage cannot be triggered under the Policy's terms where, as here, the policyholder and co-employee tortfeasor are immune from tort liability.  *Id.*  This argument is based on the "fellow employee rule."  Second, St. Paul argues that because no UM/UIM coverage exists as a matter of law, Plaintiffs' extracontractual claims also fail

2

as a matter of law. *Id*. Those claims depend on Plaintiffs being able to prove that no reasonable basis existed to deny payment of UM/UIM benefits, and the absence of UM/UIM coverage supplies such a basis. *Id*.

Plaintiffs contend, on the other hand, that St. Paul's denial of coverage is inconsistent with the language of the Policy and contrary to Colorado law. *Pls. Mot.* [#26] at 2. They seek a partial summary judgment as to coverage for their claims under the Policy. Plaintiffs agree that the key issue in the coverage determination is whether the immunity of Mr. Bednarz under the fellow employee rule bars a UM/UIM claim. *Id*. at 9. Plaintiffs claim that the immunity of Mr. Bednarz does not bar such a claim for two distinct reasons: (1) Plaintiffs are "legally entitled" to collect from Mr. Bednarz even though he is a "fellow employee" immune from a direct tort action; and (2) St. Paul agreed to provide UM/UIM coverage for injuries caused by the negligence of a "fellow employee." *Id*. at 9-10.

## II. Material Facts

Unless otherwise noted, the facts set forth below are deemed to be undisputed. All the facts have been considered, even though they are not all stated in this Order. The Court has cited to the evidence only when a fact is disputed or the Court finds it instructive to do so.

### A.    The Policy

St. Paul issued policy number ZPP-15T7170A-17-N4 ("Policy") to Patriot. *Defs.' Mot., Ex. A* ("Policy"), at 1. Patriot is the named insured on the Policy.

The Policy includes commercial automobile insurance coverage, subject to all of the Policy's terms and conditions. Because the named insured on the Policy is a company, here Patriot, "protected persons" constitute "anyone in a covered auto or temporary

substitute for a covered auto" or "anyone entitled to collect damages tor bodily injury to another protected person." *Policy* at 22.

The insuring clause of the UM/UIM coverage portion of the Policy states that St. Paul will

> pay damages that persons protected under this agreement are legally entitled to collect from the owner or driver of an uninsured vehicle or underinsured vehicle if the damages result from an accident that happens while this agreement is in effect and causes covered:
>
> •     bodily injury to the protected person; or
>
> •     property damage.
>
> However, [St. Paul will] only pay these damages when the owner's or driver's liability results from the ownership, maintenance or use of the uninsured vehicle or underinsured vehicle.

*Policy* at 19.  The Policy also states that St. Paul "won't pay for any part of damages for which a protected person is also entitled to be paid under any workers compensation, disability benefit, or similar law." *Id.* at 23.

Among the exclusions in the Policy relating to Auto Liability Protection ("bodily injury" coverage) is the following: "**Injury to a fellow employee.**  We won't cover bodily injury to a fellow employee of any protected person arising out of and in the course of the fellow employee's employment by you." Policy at 15.  Also, the Oil and Gas Commercial General Liability Protection section of the Policy states: "[n]o employee or volunteer worker is a protected person for bodily injury or personal injury to … any fellow employee." *See Pls.' Resp. to Defs.' Mot.* [#25], Ex. 2, Policy at 5-6.  Similarly, the Oil and Gas Umbrella Excess Liability Protection section of the Policy states: "**Injury to owners or fellow employees.**

We won't protect your employees for bodily injury or personal injury to . . . any fellow employee[.]"  *Id.* at 11.

The Uninsured Motorist section of the Policy contains among the exclusions from UM coverage the following:

> **Exclusions in your Auto Liability Protection.** We won't cover:
>
> • bodily injury; or
> • property damage to a covered auto;
> that's excluded by any of the exclusions in your Auto Liability Protection, *other than any of the following exclusions*:
> • Contract liability.
> • Control of property.
> • Employer's liability.
> • *Injury to a fellow employee.*

Policy at 23 (emphasis added).  Thus, the UM/UIM portion of the Policy exempts the "injury to a fellow employee" exclusion in the Auto Liability Protection section.

**B.     The Accident**

On July 25, 2018, Mr. Coleman-Domanoski was a passenger in a pick-up truck driven by his co-employee, Mr. Bednarz, and owned by his employer, Patriot. Mr. Coleman-Domanoski, Mr. Bednarz, and two other Patriot employees were returning from a fracking job site to a Patriot facility.

Mr. Bednarz lost control of the vehicle, causing it to leave the highway and roll two and a quarter times (the "Accident").  The Police Report states that during the Accident, Mr. Coleman-Domanoski was ejected from the vehicle and sustained serious injuries. Mr. Coleman-Domanoski and his wife subsequently claimed and received workers-compensation benefits through Patriot's workers-compensation insurance.

**C.     Plaintiffs' UM/UIM Claims**

Plaintiffs submitted claims to St. Paul requesting payment of UM benefits under the

Policy.  *See Pls.' Mot.* [#26], Exs. 5 and 6.  St. Paul responded to Plaintiffs' claims, stating

that:

> a. the apparent "cause of loss was that [Alexander Bednarz] fell asleep
> causing the vehicle to leave the roadway and roll."
>
> b. "Joshua [Coleman-Domanoski] qualifies as a protected person under the
> Policy as Joshua was occupying a covered auto at the time of the loss."

*Id.*, Exs. 7 and 8.  St. Paul gave the following reason for its denial of the UM claims:

> Although Colorado allows an employee to file for workers compensation
> benefits and underinsured motorist benefits under the employer's policy (in
> this case Patriot) where the injury is caused by a third-party, it does not allow
> recovery under underinsured motorist benefits when the injury is caused by
> a fellow employee/co-worker. Also, where relatives or heirs of the employee
> (in this case Mallory), are injured by the employee's co-worker and have
> applied for workers compensation benefits, they cannot recover underinsured
> motorist benefits from the employer's auto policy.

*Id.*

### III.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to

assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Pursuant to Fed. R. Civ. P. 56(a), summary judgment should be entered if the pleadings,

the discovery, any affidavits, and disclosures on file show "that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter of law."  An issue

is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of

the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is

material if it might affect the outcome of the case under the governing substantive law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.  *See Anderson*, 477 U.S. at 248.  The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which the Court views in the light most favorable to him.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).

Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2738 (4th ed. 2017).

## IV.  Analysis

Plaintiffs assert that under the terms of the Policy, they must prove the following elements to establish coverage for their UM claims: (1) they are protected persons under the UM/UIM section of the Policy; (2) the tortfeasor's motor vehicle was uninsured; (3) the accident occurred while the Policy was in effect; (4) Mr. Coleman-Domanoski sustained

7

bodily injury; (5) the injuries resulted from use of a motor vehicle; and (6) Plaintiffs are either (a) "legally entitled to collect" from the tortfeasor or (b) the Policy otherwise provides coverage for UM claims against "fellow employees."  St. Paul does not contest Plaintiffs' statement of the elements for coverage of their UM claims.

St. Paul acknowledges that Mr. Coleman-Domanoski is a protected person under the policy.  *Pls.' Mot.* [#26], Exs. 7 and 8.  Further, the following facts in this paragraph are undisputed for purposes of the Motions [#19, #26]:  Mr. Coleman-Domanoski was in a Patriot vehicle operated by a fellow employee at the time of the accident, and the vehicle was covered under the policy.  Mallory Coleman-Domanoski is a "protected person" because her loss of consortium claim entitles her to collect damages for bodily injury to her husband.  The accident occurred while the Policy was in effect; Mr. Coleman-Domanoski sustained bodily injury; and the injuries resulted from use of a motor vehicle.  Moreover, Mr. Bednarz is immune from a suit by Mr. Coleman-Domanoski under the WCA.  Colo. Rev. Stat. § 8-41-203(1)(a) (when workers' compensation coverage is available, there is no tort remedy against one in the same employ).  For purposes of UM coverage, a tortfeasor's immunity from suit is treated as equivalent to being uninsured.  *See Borjas v. State Farm Mut. Auto Ins. Co.*, 33 P.3d 1265, 1268 (Colo. App. 2001).

The only element in dispute is (6): whether Plaintiffs are either (a) "legally entitled to collect" from the tortfeasor or (b) the Policy otherwise provides coverage for UM claims against "fellow employees."  The Court thus turns to that issue.

## A.    Whether Plaintiffs are "Legally Entitled to Collect" from the Tortfeasor

As noted in Section II, *supra*, the insuring clause of the UM/UIM coverage portion of the Policy states that St. Paul will pay damages that persons protected under the insurance

8

agreement are legally entitled to collect from the owner or driver of an uninsured vehicle or underinsured vehicle if the damages result from an accident that happens while the agreement is in effect and causes covered bodily injury to the protected person.  The disputed portion of this clause is whether Mr. Coleman-Domanoski is "legally entitled to collect from" Mr. Bednarz.  The "legally entitled" language in the policy tracks the Colorado UM/UIM statute, Colo. Rev. Stat. § 10-40-609(1)(a), which states in relevant part:

> No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle licensed for highway use. . . unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death . . ., for the protection of persons insured thereunder *who are legally entitled to recover damages* from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. . . .

*Id.* (emphasis added).

Plaintiffs assert that the "legally entitled" to collect language in the policy and the Colorado UM/UIM statute have been interpreted differently by several panels of the Colorado Court of Appeals.  *Pl.'s Mot.* [#26] at 10.  According to Plaintiffs, the first line of decisions concluded for UM/UIM purposes that an injured person is "legally entitled" to collect from the tortfeasor even though the tortfeasor is immune from suit. *Id.* (citing *Borjas*, 33 P.3d at 1269) (finding that "legally entitled to recover" under Colo. Rev. Stat. § 10-4-609(1)(a) "means that the insured must be able to establish that the fault of the uninsured motorist gave rise to damages and the extent of those damages"); *Am. Family Mut. Ins. Co. v. Ashour*, 410 P.3d 753, 764 (Colo. App. 2017) (same)).  The second line of cases concluded in the UM/UIM context that an injured party is not "legally entitled" to collect if the tortfeasor is immune from suit under the fellow employee rule.  *Id.* at 10-11 (citing *Ryser v.*

*Shelter Mut. Ins. Co.*, 2019 COA 88, ¶ 37; *Cont'l Divide Ins. Co. v. Dickinson*, 179 P.3d 202, 208 (Colo. App. 2007)).  Plaintiffs submit that the first line of cases is more persuasive and should be followed by the Court, resulting in coverage for Plaintiffs since Mr. Bednarz was at fault for the damages.  *Pl.'s Mot.* [#26] at 11.

The Court rejects Plaintiffs' argument and follows the Colorado Court of Appeals' decision in *Ryser,* finding that the first line of cases is not persuasive for the reasons noted there.  The *Ryser* case, which is factually analogous to this one, held that where "uninsured motorist coverage has been bought and paid for by someone other than the insured employee," the employee cannot recover on an uninsured motorist claim against an insurance policy issued to a party who has workers-compensation immunity.  2019 COA 88, ¶ 38.

*Ryser* addressed the *Borjas* and *Ashour* cases relied on by Plaintiffs, and found that their analysis was based on policy considerations rather than the plain, unambiguous language of the statute.  2019 COA 88, ¶¶ 25, 35; *see also Markel Ins. Co. v. Hollandsworth*, 400 F. Supp. 3d 1155, 1159 (D. Colo. 2019) (discussing *Ryser*).[1]  Further, the *Ryser* court found that the *Borjas* and *Ashour* cases focused only on the fault of the tortfeasor and not the additional issue of whether the insured was legally entitled to recover damages.  *Id.* ¶ 35.  *Ryser* stated that "because the General Assembly included the word

_____

[1] While Plaintiffs argue that the "legally entitled" language is ambiguous, the Court disagrees.  As *Ryser* noted, neither *Borjas* or *Ashour* found the phrase to be ambiguous, and "[a]t least one division of this court has held that it was not."  *Id.* ¶¶ 25, 26 (citing *Jaimes v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 743, 746 (Colo. App. 2002)).  Thus, *Ryser* also did not find the "legally entitled" language to be ambiguous.

'legally,' it must have meant something more than simply 'entitled.'" *Id.* ¶ 27.  The court then explained:

> To be sure, fault is a necessary step. But under the plain language of section 10-4-609, it is not sufficient. Because the tortfeasor may have affirmative defenses, merely showing that the tortfeasor was at fault would not establish a legal entitlement to recover from an owner or operator of an uninsured motor vehicle.

*Id.*

The *Ryser* court concluded that while the plaintiff met the threshold for seeking benefits under the UIM/UM policy because the coworker immunity rule in the policy rendered the driver uninsured, the plaintiff did not meet the additional step of showing he was legally entitled to recover damages from the owner/operator of the vehicle due to workers-compensation and co-employee immunity.  2019 COA 88, ¶ 37.  This immunity protected the owner/operator "from suit, not just from damages."  *Id.* ¶ 34; *see also Markel Ins. Co.*, 400 F. Supp. 3d at 1157 ("an 'employer that has complied with the [WCA] is granted immunity from common-law actions for damages.' . . . 'Co-employees are also immune from suit for injuries to a fellow employee arising out of the scope of employment.'") (citations omitted).  Similarly, workers-compensation immunity protects Mr. Bednarz and Patriot in this case.  Because Mr. Coleman-Domanoski cannot prevail in an action against his co-employee or employer, Plaintiffs cannot trigger coverage and obtain UM/UIM benefits from St. Paul.  *Ryser,* 2019 COA 88, ¶¶ 34, 37.

Two cases from this Court reached the same result as *Ryser,* and both are also factually on point with this one.  *See Markel Ins. Co.*, 400 F. Supp.3d at 1160; *Employers Mut. Cas. Co. v. Trejo*, No. 18-cv-03066-RM-KLM, 2019 WL 2341557, at **1-3 (D. Colo. Jun. 3, 2019).  As Judge Moore noted in *Trejo*, the *Ashour* and *Borjas* cases are

11

distinguishable and involve different policy considerations.  2019 WL 2341557 at **2-3.  In both cases the parties were seeking UM/UIM benefits from their own personal auto insurance policies, not their employers' policies.  *Id.*[2]  In conjunction with his conclusion that neither *Ashour* not *Borjas* was applicable, Judge Moore stated that the insured "cite[d] no authority for the illogical proposition that he is legally entitled to recover from his employer's insurer . . . even though his employer and co-employee have WCA immunity."  *Id.*  The same analysis applies here.  Mr. Coleman-Domanoski is not seeking to recover under his own policy but the policy of his employer who is immune under the WCA.  *Borjas* and *Ashour* are thus distinguishable and not controlling.

Judge Moore further found that "this distinction . . . matters because allowing [the party seeking UM/UIM benefits] to recover additional damages that derive from his immune employer and co-employee would erode the public policy behind the WCA."  *Trejo*, 2019 WL 2341557, at 2.  Further, he found that "such an approach could also undermine the public policy behind the UM/UIM statute, which is to make such coverage available to motorists." As explained in the *Trejo* decision:

> Defendant did not decide to obtain coverage under a policy through Plaintiff, and he did not pay the premiums required under it. Allowing employees to recover under their employer's policies under these circumstances could discourage them from purchasing coverage of their own. For analogous reasons, in *Continental Divide Insurance Co. v. Dickinson*, 179 P.3d 202, 207 (Colo. App. 2007), also discussed in *Ashour*, a division of the court rejected the notion that an independent contractor who had the opportunity to obtain

---

[2] In *Borjas*, the court permitted the plaintiff, the injured party, to proceed with a UM/UIM claim against her own auto policy, not the insurance policy of the at-fault parties, both of whom had immunity under the Colorado Governmental Immunity Act ("CGIA").  *Borjas*, 33 P.3d at 1269; *Trejo*, 2019 WL 2341557 at *2.  Similarly, in *Ashour,* the injured party was permitted to proceed with a UM/UIM claim against his own personal auto insurance policy despite the fact that the at-fault parties had immunity under the WCA.  410 P.3d at 765-65.

> insurance coverage but chose not to could not recover damages though the employer's UM/UIM insurance. Accordingly, the Court is not persuaded that Colorado courts would grant Defendant a windfall under these circumstances.

*Id.* Judge Moore thus granted summary judgment for the insurance company, finding that Mr. Trejo was not entitled to coverage under the UM/UIM policy in addition to the benefits he recovered under the WCA. *Id.*

Similarly, after an analysis of *Trejo* and the Colorado state court cases, Judge Martinez in *Markel* "predict[ed] that, if presented with the question joined in this action, the Colorado Supreme Court would hold that an employee injured during the course of employment cannot obtain benefits under his or employer's UM/UIM policy in addition to workers' compensation." 400 F. Supp. 3d at 1158. As the employee was not entitled to benefits under the policy, Judge Martinez found that the employee's claims for "breach of contract and statutory bad faith breach of contract fail as a matter of law." *Id.* The Court agrees with and adopts the analysis in the well-reasoned *Trejo* and *Markel* decisions.

Plaintiffs nonetheless urge the Court to consider the policy reasons behind UM/UIM insurance, "which requires that UM insurance policies must provide coverage for the protection of a motorist injured by the negligence of a driver who is immune from liability." *Pls.' Reply to Pls.' Mot.* [#38], at 6 (quoting *Borjas*, 33 P.3d at 1269). Plaintiffs aver that this public policy is furthered when UM/UIM coverage applies when the tortfeasor may have insurance but is immune from suit. *Pls.' Resp. to Def.'s Mot.* [#25], at 7. Plaintiffs further argue that a UM/UIM insurer should not be permitted to ride on the coattails of the employer's immunity under the WCA, and that the definition of "legally entitled" should not vary depending on who purchased the policy or the source of the tortfeasor's immunity. *Reply* [#38], at 9-10.

The Court rejects Plaintiffs' arguments.  The facts regarding who purchased the policy and the source of the tortfeasor's immunity are precisely the issues that govern the courts' decisions on coverage.  Those issues are critical as they impact not only the public policy behind the UM/UIM statute, but the "the interplay" between that statute and the WCA or other immunity statutes such as the CGIA.  *See Trejo*, 2019 W 22341557, at *2.  The Colorado Court of Appeals' reasoning in *Borjas* is instructive.  The "*Borjas* division found that persons and entities entitled to immunity under the CGIA would be unaffected by allowing the insured to bring . . . a claim in connection with his own auto policy, and thus the public policies of the UM/UIM statute and the CGIA could be served simultaneously."  *Trejo*, 2019 WL 2341557, at *2 (citing *Borjas*, 33 P.3d at 1269).  Thus, it is precisely because Ms. Borjas sought UM benefits under her own personal auto policy, not the immune parties' policy, that the *Borjas* court permitted the UM claim.

Similarly, in *Ashour*, the court determined that allowing the injured employee to bring a claim under his own policy would not hinder the public policy of the WCA.  *See Trejo*, 2019 WL 2341557, at *2 (citing *Ashour*,410 P.3d at 765, ¶ 66).  The *Ashour* court stated, "[a]llowing Ashour 'to claim benefits from his own insurance carrier would not in any way affect the immunity provided to his employer and co-employee by the [WCA]' because 'Ashour did not seek to recover additional damages from his immune employer or co-employee; instead, *he sought only to enforce the terms of his own insurance policy and recover benefits from his own insurer*.'"  *Id*. (quoting *id*. ¶ 71) (emphasis in original).  Thus, in *Ashour* "the public policies of the UM/UIM statute and the WCA could both be served, and Ashour was legally entitled to recover under his policy."  *Id* (citing *id*.)  That is not the situation here.

14

Plaintiffs also argue in the Reply [#38] that the Colorado Supreme Court's decision in *Aetna Cas. & Sur. Co. v. McMichael*, 906 P.2d 92 (Colo. 1995) supports their position. Again, the Court disagrees.  In *McMichael*, an employee was injured on the job by an underinsured third-party tortfeasor, and sought to recover under his employer's UM/UIM policy.  *Id.* at 98.  While the court held that the injured employee was entitled to benefits under both the WCA and his employer's UM/UIM policy, this was because the WCA did "not bar [the injured employee] from bringing a tort action against the driver who caused the accident."  *Id.* at 100 n. 7.  As Judge Martinez of this Court explained as to *McMichael*, "where a suit against the tortfeasor is permitted, an employee injured on the job is entitled to benefits under both the workers' compensation scheme and the employer's UM/UIM policy."  *Markel Ins. Co.*, 400 F. Supp. 3d at 1160.  Again, that is not the situation here, where both Mr. Bednarz and Patriot are immune under the WCA.  As St. Paul notes, no Colorado case has ever required an immune party's UM/UIM policy to pay benefits where, as here, the tortfeasor also had workers-compensation immunity.

Based on the foregoing, Plaintiffs cannot establish a legal entitlement to collect damages from the tortfeasor Mr. Bednarz or his employer, who are immune from liability under the WCA.  Therefore, Plaintiffs cannot establish coverage for their UM/UIM claims under the insuring clause of the Policy.

**B.  Whether the Policy Otherwise Provides Coverage for UM/UIM Claims Against "Fellow Employees"**

 Plaintiffs next ask the Court to disregard the language of the insuring clause and forge a path to coverage through the Policy's exception to the "Injury to a fellow employee" exclusion.  Plaintiffs argue that, regardless of whether coverage for fellow employee

UM/UIM claims is created by the "legally entitled" language in the insuring clause, the Policy provides UM/UIM coverage for claims against fellow employees by excepting those claims from the exclusions in the UM/UIM section of the Policy.  Thus, as discussed in Section II, *supra*, the "Uninsured and Underinsured Motorists Protection-Colorado" section of the Policy specifically excepts and does not incorporate the fellow employee exclusion contained in the Auto Liability Protection portion of the Policy.

Plaintiffs note that the first party UM/UIM coverage is broader than the coverages for third party liability claims against an insured that are provided by other portions of the Policy. *Pls.' Resp. to Defs.' Mot.* [#25]. at 12.  The Policy's coverages for liability claims by third parties against an insured all expressly exclude "fellow employee" claims.  *Id.*  Thus, in the Auto Liability Protection, the Oil and Gas Commercial General Liability Protection, and the Oil and Gas Umbrella Excess Liability Protection sections of the Policy, St. Paul expressly excluded coverage for liability claims by a fellow employee.  *See* Section II, *supra*.  In contrast, while the "Uninsured and Underinsured Motorists Protection-Colorado" section of the Policy incorporates many coverage exclusions by reference to the Auto Liability Protection section, it specifically excepts and does not incorporate the fellow employee exclusion.  *Id.*

Plaintiffs assert from the foregoing that when the Policy is "read correctly" and as a whole, "the exception of fellow employee claims from the exclusions incorporated into the UM/UIM section leads a reasonable insured to expect that there is UM coverage for injuries caused by the negligence of a fellow employee."  *Pls.' Resp. to Defs. Mot.* [#25] at 14.[3]

---

[3] Plaintiffs point out that neither *Ryser* nor *Trejo* involved interpretation of a policy that expressly excepted from exclusion a UM/UIM claim arising from the tort of a fellow employee.  *Pls.'*

Plaintiffs further assert that the phrase "legally entitled" may not be interpreted in isolation from the rest of the Policy or in a technical sense that requires that an insured have knowledge of statutory immunities to understand the Policy. *Pls.' Mot.* [#26] at 14.

St. Paul argues, on the other hand, that Plaintiffs' argument assumes that the UM/UIM exception to the "Injury to a fellow employee" exclusion "creates coverage for fellow employee claims regardless of whether that coverage is also created by the 'legally entitled'" language of the insuring clause. *Defs.' Resp. to Pls.' Mot.* [#37] at 10.  In other words, as St. Paul notes, Plaintiffs argue that there are two paths to coverage – through the insuring clause and through an exception to an exclusion. *Id.*  St. Paul asserts that this is incorrect, because Plaintiffs' position mischaracterizes the Policy and the case law. *Reply to Defs.' Mot.* [#33] at 3.  Indeed, St. Paul states that no Colorado court has held that an exception to an exclusion may itself grant any type of coverage. *Id.*

The analysis of this issue requires an interpretation of the Policy.  An insurance policy is merely a contract that courts should interpret in line with well-settled principles of contract interpretation." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).  As the *Cyprus* court explained regarding those principles:

> In undertaking the interpretation of an insurance contract, courts should be wary of rewriting provisions, and should give the words contained in the contract their plain and ordinary meaning, unless contrary intent is evidenced in the policy. . . . Courts should read the provisions of the policy as a whole, rather than reading them in isolation. . . . Courts may neither add provisions

---

*Mot.* [#26] at 14 (comparing St. Paul UM/UIM form (*id.,* Ex. 4 at 23) with the UM/UIM policies at issue in *Ryser* (*id.,*Ex. 10 at 19) and *Trejo* (Ex. 11 at 23-24).  Plaintiffs further note that there is no indication that a similar provision was at issue in the *Dickinson* case. *Id.*  Thus, Plaintiffs argue that a finding of coverage would not be contrary to those decisions, but would conform with their holdings. *Id.* at 16.

> to extend coverage beyond that contracted for, nor delete them to limit coverage.

*Id.* (internal citations omitted).  Moreover, when provisions of an insurance policy conflict or are ambiguous, they are construed against the insurer and in favor of coverage.  *Id.*; *State Farm Mut. Auto Ins. Co. v. Nissen*, 851 P.2d 165, 166 (Colo. 1993).  A provision is ambiguous if it is susceptible of more than one reasonable interpretation.  *Cruz v. Farmers Ins. Exchange*, 12 P.3d 307, 311 (Colo. App. 2000).  The Court should not give a technical construction to an insurance contract, but should construe the insurance contract terms "as they would be understood by a person of ordinary intelligence."  *Nissen*, 851 P.2d at 166.

Plaintiffs rely on the Colorado Supreme Court's decision in *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 239-40 (Colo. 1992) in support of their argument that coverage may result from an exception to a policy exclusion.  In that case, "the general grant of coverage in the body of the policy" stated that "Shelter agreed to 'pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage to which this insurance applies. . . .'"  *Simon*, 942 P.2d at 238.  This general grant of coverage was limited by exclusions in the policy and in an endorsement.  *Id.*  Thus, one section of the policy excepted warranties of fitness or quality of the work from a coverage exclusion.  An endorsement to the policy excluded coverage for Completed Operations Hazard which was defined to include bodily injury arising out of reliance on a warranty.  *Id.* at 238-39.  The *Simon* court noted that the "policy on the one hand excepts from exclusion certain warranties while the products hazard specifically excludes coverage for damage arising from reliance upon a warranty.  The two provisions

18

are in conflict respecting the policy's coverage for liability resulting from product warranties."

*Id.* at 240.

The insurer in *Simon* argued "that an exception to an exclusion can never amount to a grant of coverage but by nature, can only limit coverage." 942 P.2d at 240. The court rejected that argument, stating:

> Although we recognize the technical merits of [the insurer's] argument, we nevertheless hold that these provisions are in conflict when viewed from the standpoint of a person of ordinary intelligence. As noted above, the meaning and effect of insurance contracts are not to be considered from the perspective of a person who has particular expertise in interpreting them. Given the broad grant contained in the general grant of coverage, and the exceptions found in exclusion (a) for warranties of fitness, quality, and workmanlike performance, we are of the opinion that a person of ordinary intelligence would conclude that the policy issued by Shelter covers damages resulting from the breach of such warranties -- in spite of the endorsement's exclusions for damages resulting under the products hazard or completed operations hazard.
>
> Thus, after considering the plain language of the insurance contract, we hold that exclusion (a) and the endorsement exclusions are in conflict.

*Id.* at 240-41. Having found that the policy contained inconsistent positions, the *Simon* court found that they "must be construed against Shelter and in favor of coverage. . . ." *Id.* at 242; *see also Worsham Constr. Co. v. Reliance Ins. Co.*, 687 P.2d 988, 990-91 (Colo. App. 1984) (finding ambiguity in policy where the court could not determine whether coverage was afforded for damages to the insured's work product, and construing ambiguity in favor of coverage, as "[t]he intent to exclude such coverage could have been clearly expressed but it was not."); *Colard v. Am. Family Mut. Ins. Co.*, 709 P.2d 11, 14 (Colo. App. 1985) (same).

Plaintiffs argue that the express exception of the fellow employee exclusion from the exclusions incorporated into the UM/UIM section of the policy is inconsistent with St. Paul's position that there is no UM/UIM coverage if the tortfeasor is an immune fellow employee.

19

*Pls. Mot.* [#26] at 15.  They point out that any inconsistency in the policy must be interpreted against the insurer and in favor of coverage.  *Id.*  Plaintiffs further assert that allowing an employer to provide UM/UIM insurance to protect employees from the effects of injury or death caused by fellow employees is consistent with the public policies underlying both the UM/UIM Statute and the WCA, which provides a floor, not a cap, on employee benefits.  *Id.* at 17.  According to Plaintiffs, to deny coverage here would ignore the exception of the fellow employee exclusion in the UM/UIM portion of the policy.  *Pls.' Mot.* [#26] at 16 (citing *Cyprus Amax Minerals Co.*, 74 P.3d at 299) (court may not delete policy provisions to limit coverage)).

The Court rejects Plaintiffs' argument.  First, *Simon* involved a conflict between two exclusions, which is not the case here.  More importantly, the Colorado Supreme Court in *Simon* did not hold that an exception to an exclusion could act as a coverage grant to create an entirely new indemnification obligation.  To the contrary, it appears that there was no dispute regarding coverage.  The *Simon* court noted the "broad grant contained in the general grant of coverage[,]" but found that the exclusions narrowed the scope of the coverage.  *Id.* at 238, 240-41.  Similarly, in the *Colard* case cited by Plaintiffs, the Court explicitly found that the claim fell within the broad insuring agreement.  709 P.2d at 13.  However, an exception to an exclusion potentially conflicted with other exclusions, creating an ambiguity in the policy that the court construed against the insurer and in favor of coverage.  *Id.* at 13-14.  Finally, in *Worsham Construction Company*, the court considered only whether an exception to an exclusion conflicted with other exclusions in the policy.  687 P.2d at 990-91.  Whether the exception created coverage independently of the insuring agreement was not addressed.  Accordingly, because the cases cited by Plaintiffs do not

20

address whether an exception in an insurance policy can create coverage independently of the insuring agreement portion of the policy, they are not persuasive.

Moreover, as St. Paul notes, the Tenth Circuit, construing Colorado law, has held that a claim must fall within an insurance policy's grant of coverage. *Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1289 (10th Cir. 2011). As the *Greystone* court stated:

> Structurally, a . . . policy "begin[s] with a broad grant of coverage, which is then limited by exclusions." Exceptions to exclusions narrow the scope of the exclusion and, as a consequence, add back coverage. But it is the initial broad grant of coverage, not the exception to the exclusion, that ultimately creates (or does not create) the coverage sought."

*Id.* (citation omitted); *see also Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, 882 F.3d 952, 958 (10th Cir. 2018) (exclusions, which narrow the scope of coverage in an insuring agreement, "are subject to exceptions, which restore coverage – but only to the extent coverage was initially included in the basic insuring agreement"); *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.,* 673 N.W.2d 65, 73 (Wis. 2004) (in a three step procedure for determining coverage, analysis ends after the first step if there is no initial grant of coverage based on the facts); *Brown v. Tokio Marine & Nichido Fire Ins. Co.*, 811 N.W.2d 872, 875 (Wis. App. 2012) ("We first look to see if the insurance policy makes an initial grant of coverage based on the facts. . . . If it does not, our analysis ends. . . . An exception only applies to the exclusion clause within which it appears; in other words, an exception to an exclusion cannot trump the insurance policy or a separate exclusion.").

Based on the foregoing, the "legally entitled" language in the insuring clause is the starting, and in this case, the ending point of the analysis. As explained in detail above, construction of the "legally entitled" language in accordance with applicable law results in

the conclusion that there is no coverage to Plaintiffs under the Policy.  The Court therefore need not consider Plaintiffs' argument that the "injury to a fellow employee" exception to the UM/UIM coverage exclusions creates a conflict or ambiguity based on the insured's alleged reasonable expectations.  The doctrine of reasonable expectations "supplements, but does not replace, traditional principles of contract interpretation."  *Bailey v. Lincoln General Ins. Co.*, 255 P.3d 1039, 1050 (Colo. 2011).  It "has no application in the context of entitlement to benefits, when an insured can have no reasonable expectation of receiving benefits expressly excluded from the policy."  *Northland Ins. Co. v. Rhodes*, No. 09-cv-01691-REB-CBS, 2010 WL 5110107, at *11 (D. Colo. Dec. 9, 2010).  Because traditional principles of contract interpretation mandate the conclusion that there is no coverage under the Policy, Plaintiffs' reasonable expectations argument fails.

### V.  Conclusion

Based on the forgoing, the Court finds that no UM/UIM coverage is available to Plaintiffs under the Policy.  Plaintiffs' contract claims under the Policy and claim for statutory benefits thus fail as a matter of law.  *See Markel Ins. Co.*, 400 F. Supp. 3d at 1160; *West Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1192-93 (10th Cir. 2009) ("Having concluded that the insurance companies' denial of coverage was proper as a matter of law, we must also affirm the district court's grant of summary judgment in their favor on MarkWest's bad faith claim").  As there is no coverage, St. Paul had a reasonable basis for denying Plaintiffs' request for UM/UIM benefits.  Accordingly,

IT IS HEREBY **ORDERED** that Defendants' Motion for Summary Judgment [#19] is **GRANTED**.  Judgment shall enter in favor of Defendants and against Plaintiffs.

IT IS FURTHER **ORDERED** that Plaintiffs' Motion for Partial Summary Judgment [#26] is **DENIED**.

Dated:  April 24, 2020

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge